FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 21, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DAWNA F.,[1]

                Plaintiff,

     v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                Defendant.

No.   4:19-CV-5115-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Dawna F. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly determining that Plaintiff did not have severe physical and mental impairments, 2) improperly determining that the impairments did not meet or equal Listings 14.09D and 11.02, 3) discounting

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 15 & 28.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

Plaintiff's symptom reports, 4) failing to admit a medical source statement, and 5) improperly determining steps four and five based on an incomplete hypothetical question. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 15, and grants the Commissioner's Motion for Summary Judgment, ECF No. 28.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 404.1520(a)

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.* § 404.1520(b).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

1
2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

3
4
5
6
7

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

8
9
10
11
12

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

13
14
15

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

16
17
18
19
20
21
22
23

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.* § 404.1520(c).

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.* § 404.1520(a)(4)(iv).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.   Factual and Procedural Summary

Plaintiff filed a Title II application, alleging a disability onset date of June 1, 2013.[18] Her claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Jesse Shumway.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Plaintiff met the insured status requirements through December 31, 2019;

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 75.

[19] AR 82 & 91.

[20] AR 36-74.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- Step one: Plaintiff had not engaged in substantial gainful activity since June 1, 2013, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: obesity, improved status post gastric sleeve surgery; degenerative arthritis of the lumbar spine; asthma; and umbilical hernia;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work except:

  > [S]he cannot climb ladders, ropes, or scaffolds, and can only occasionally climb stairs and ramps; she can frequently perform all other postural activities; she cannot have concentrated exposure to pulmonary irritants; and she can have no exposure to hazards such as unprotected heights and moving mechanical parts.

- Step four: Plaintiff was capable of performing past relevant work as a retail store manager, sales clerk, telephone solicitor, and waitress; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as garment sorter, cashier II, and counter attendant.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinions of testifying expert Lynn Jahnke, M.D.; and

- little weight to the opinion of Debra Rood, LCSW.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23] Likewise, the ALJ discounted the third party report from Plaintiff's husband.[24]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

---

[21] AR 19-29.

[22] AR  26-27.

[23] AR 24.

[24] AR 27.

[25] AR 1.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

### III.   Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The

Commissioner's decision is set aside "only if it is not supported by substantial

evidence or is based on legal error."[27] Substantial evidence is "more than a mere

scintilla but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."[28] Moreover, because it is

the role of the ALJ and not the Court to weigh conflicting evidence, the Court

upholds the ALJ's findings "if they are supported by inferences reasonably drawn

from the record."[29] The Court considers the entire record as a whole.[30]

---

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must

consider the entire record as whole, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion," not simply the

evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th

Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such

evidence was not considered[.]").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

## IV.    Analysis

### A.    Step Two (Severe Impairment): Plaintiff fails to establish consequential error.

Plaintiff contends the ALJ erred at step two by failing to identify other additional impairments as severe impairments.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[34] To show a severe mental impairment, the claimant must first prove the existence of a mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.[35] If a mental impairment is proven, the ALJ then considers whether the

---

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[34] 20 C.F.R. § 416.920(c).

[35] *Id.* § 416.921 (recognizing the claimant's statement of symptoms alone will not suffice).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

medically determinable impairment is severe or not severe. A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[36] Basic mental work abilities include understanding, carrying out, and remembering simple instructions, dealing with changes in a routine work setting, and responding appropriately to supervision, coworkers, and usual work situations.[37]

Step two is "a de minimus screening device [used] to dispose of groundless claims."[38] And "[g]reat care should be exercised in applying the not severe impairment concept."[39]

At step two, the ALJ determined Plaintiff had the severe impairments of obesity, improved status post gastric sleeve surgery; degenerative arthritis of the lumbar spine; asthma; and umbilical hernia. The ALJ acknowledged Plaintiff's medically determinable physical impairments including sleep apnea (controlled with BiPAP), restless leg syndrome, myoclonic jerks, gastro-esophageal reflux disease (GERD), cholelithiasis, history of thyroid cancer, hypothyroidism, left shoulder tendinopathy, hyperlipidemia, and hypertension, but determined they

---

[36] SSR 85-28 at *3.

[37] 20 C.F.R. § 416.921.

[38] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[39] SSR 85-28.

resulted in no more than minimal limitations of basic work activities.[40] Plaintiff argues she has met her burden to demonstrate that the impairments of GERD, obstructive sleep apnea, fibromyalgia, myoclonic seizures/jerks, left shoulder impairments, and depression result in more than a "slight" abnormality in her ability to perform basic work-activities, but provides no explanation as to how the cited evidence is severe.[41]

As to GERD, the ALJ opined Plaintiff's GERD symptoms were nonsevere because they subsided in September 2015 with an increase of omeprazole and based on an EGD study in September 2017 that showed Plaintiff's esophagus was normal with no evidence of esophagitis or stricture.[42] The ALJ also discussed a September 2017 treatment note where Plaintiff presented with symptoms typically related to GERD and her gastric sleeve surgery, but, per Plaintiff's reported symptoms, these symptoms arose in part from Plaintiff eating too fast or consuming certain foods or too much food at one time. Plaintiff cites to parts of the record that show self-reported symptoms of nausea, vomiting, and abdominal pain, but provides no evidence or explanation of why these symptoms are severe. The

---

[40] AR 20.

[41] ECF No. 15 at 11-13.

[42] AR 21 (citing AR 398 & 805 (Impression: normal esophagus, no evidence of esophagitis, sleeve gastrectomy found and characterized by healthy appearing mucosa, and normal duodenal bulb and second petition of the duodenum.)).

ALJ's finding that Plaintiff's GERD was not a severe impairment is a rational

interpretation supported by the record.[43]

As to sleep difficulties, the ALJ opined Plaintiff's sleep apnea was relatively

controlled with BiPAP treatment.[44] The ALJ's findings that Plaintiff's sleep apnea

was not a severe impairment is a rational interpretation supported by the record.[45]

As to fibromyalgia, the ALJ found that there was no objective medical

evidence of fibromyalgia.[46] The evidence Plaintiff cites to involves evidence from

nurse practitioner Josue Reyes as part of patient's medical history[47], however, a

---

[43] *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

[44] AR 20-21; AR 583 (During a one month follow up after starting BiPAP, Plaintiff

reported she was no longer sleeping in her recliner at night and felt more energetic

in the morning.); AR 606 (Plaintiff reports "doing very well" with the current

BiPAP and that "[she] love[s] it" and "can't sleep without it."); AR 607 (estimates 7-

8 hours of sleep a night); AR 611 (Plaintiff "states she continues to feel sleepy and

has to take multiple naps throughout the day. When she initially wakes up after 9-

10 hours of use of her BiPAP machine she feels refreshed.").

[45] *See Burch*, 400 F.3d at 679.

[46] AR 23.

[47] ECF No. 15 at 12 (citing AR 365 ("The patient is a 46-year old lady who is

morbidly obese with history of . . . fibromyalgia . . . ."); AR 584 (same); AR 401

(active or inactive problems include fibromyalgia); AR 576 (history of fibromyalgia);

1

2

nurse practitioner cannot establish a diagnosis or disability absent corroborating competent medical evidence.[48] Plaintiff fails to provide sufficient evidence to establish fibromyalgia as a severe impairment.

3

4

5

6

7

As to myoclonic jerks, the ALJ recognized that the record included evidence of myoclonic jerks, but because the jerking improved when Plaintiff's sleep quality improved and did not interfere with Plaintiff's ability to drive, the ALJ found Plaintiff's myoclonic jerking nonsevere.[49]

8

9

10

In addition, the ALJ found Plaintiff's left shoulder impairment nonsevere because the medical records suggested that Plaintiff's tendinopathy was a

11

12

13

AR 593, 600 (same); *see* AR 47 (Impartial medical expert Lynne Jahnke, M.D. testified that she found no evidence of fibromyalgia in the record outside of nurse practitioner Josue Reyes' medical report.).

14

15

16

[48] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); 20 C.F.R. § 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source.").

17

18

19

20

21

22

[49] AR 21; *see* 608-10 ("[Plaintiff] had [jerking a] few times when driving and since they last very short time she has not had difficulty with driving so far."); AR 611 (Jerking of Plaintiff's upper extremities has happened while driving, "but she is not worried as it has not significantly affected her driving."); AR 606 ("The myoclonic jerking has significantly improved since improvement in her sleep quality. [Plaintiff] estimates once or twice a month and they are minor.").

23

nonsevere impairment manageable with conservative treatment.[50] Specifically, the

ALJ pointed to the fact Plaintiff did not report shoulder pain until September 2017

after reporting chronic shoulder pain that interfered with her sleep in May 2015

and that she received physical therapy for her shoulder in October 2017.[51] The ALJ

also recognized clinical examinations confirmed some range of motion limitations,

but that the overall findings were consistent with a mild impairment.[52] The ALJ's

finding that Plaintiff's left shoulder pain was not a severe impairment is a rational

interpretation supported by the record.[53]

Lastly, the ALJ found Plaintiff's depression did not cause more than

minimal limitations in Plaintiff's ability to perform basic mental work activities.[54]

---

[50] *See* AR 412 (Plaintiff still has shoulder pain which has improved with sleeping in

a recliner.); AR 795 (Plaintiff will benefit from intervention rehab to reduce her left

shoulder pain to more manageable levels and restore range of motion, strength,

and function to the complex of joints and muscles to meet the demands of her life.).

[51] AR 789.

[52] AR 22 (citing AR 696 (left shoulder physical examination consistent with mild

impairment but considered labral injury)).

[53] *See Burch*, 400 F.3d at 679.

[54] *See* AR 386 (Plaintiff reported depression was "very well controlled."); AR 375,

591 (depression improved on citalopram); AR 377 (depressed for many years)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Again, Plaintiff cites to evidence in the record discussing Plaintiff's depression symptoms, but fails to establish how it equates Plaintiff's depression as a severe impairment. The ALJ's findings that Plaintiff's depression was not a severe impairment is a rational interpretation supported by the record.[55]

Furthermore, any error at step two is harmless because the ALJ resolved step two in Plaintiff's favor by finding severe impairments and continued the sequential analysis through step five. Also, the ALJ considered Plaintiff's non-severe issues when formulating the RFC.[56]

## B.    Step Three (Listings): Plaintiff fails to establish error.

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet or medically equal Listings 14.09D (fibromyalgia) and 11.02 (epilepsy), singly or in combination.

Plaintiff contends she meets Listings 14.09D and 11.02 because she has "(1) myoclonic seizures, occurring two to three times per week . . . confirmed through abnormal EEG and MRI findings"; "(2) repeated manifestation of fibromyalgia, with constitutional signs of severe fatigue, fever, and malaise, with headaches, joint pain/stiffness/swelling, abdominal pain, nausea, vomiting,

---

*compare with* AR 172 (earning records indicated Plaintiff consistently worked from 2000 to 2014).

[55] *See Burch*, 400 F.3d at 679.

[56] AR 22; *see Burch*, 400 F.3d at 679.

constipation/diarrhea, and incontinence"; and "(3) marked limitation in activities of daily living and completing tasks in a timely manner due to daily interruptions from severe gastrointestinal symptoms, frequent napping resulting from severe fatigue, deficits in concentration, attention, and memory, and confusion."[57] However, Plaintiff fails to explain how these symptoms meet the listings requirements.

Because fibromyalgia is not a listed impairment, the ALJ looks to Listing 14.09D (inflammatory arthritis). Listing 14.09D[58] requires:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at a marked level:
>
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 11.02 requires the claimant experience a particular frequency of seizures despite adherence to prescribed treatment.[59] The claimant must have either: generalized tonic-clonic seizures occurring at least once a month for at least three consecutive months, dyscognitive seizures occurring at least one a week for at least three consecutive months; generalized tonic-clonic seizures occurring at least once

---

[57] ECF No. 15 at 14.

[58] 20 C.F.R. part 404, Subpart P, App. 1, Section 14.09D.

[59] *Id.* Listing 11.02.

every two months for at least four consecutive months, or dyscognitive seizures occurring at least once every two weeks for at least three consecutive months, and a marked limitation in physical function, understanding/remembering/applying information, interacting with others, concentrating/persisting/maintaining pace, or adapting/managing oneself.[60]

As Plaintiff highlights, the ALJ's listings findings did not include Listings 14.09D and 11.02. However, the ALJ's discussion and analysis about the medical evidence concerning Plaintiff's fibromyalgia and jerking in subsequent sections of the decision permits the Court to meaningfully review the ALJ's listings findings.

As previously explained, the ALJ opined no medical evidence supported fibromyalgia as a medically determinable impairment.[61] The ALJ meaningfully explained throughout his opinion why Plaintiff did not have a marked limitation in her activities of daily living (instead the ALJ found Plaintiff to "function[] at a relatively high level"),[62] social functioning (which the ALJ found to be mildly

---

[60] *Id.*

[61] AR 23.

[62] *See* AR 26 (citing AR 205-10 (Plaintiff can perform daily activities, such as washing dishes, vacuuming, laundry, preparing simple meals, shopping for food, clothes, and household items, and driving.); AR 587, 606 (walking daily)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

limited),[63] and completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace (which the ALJ found to be mildly limited).[64]

As to Plaintiff's seizures, the ALJ opined Plaintiff's myoclonic jerking was nonsevere. The ALJ highlighted Plaintiff's myoclonic jerking significantly improved with improvement in her sleep quality – myoclonic jerking occurring one to two times a month and were minor episodes.[65] Furthermore, Plaintiff declined treatment for her jerking episodes.[66] The ALJ's finding that Plaintiff's myoclonic jerking improved with treatment is supported by substantial evidence.

Accordingly, the ALJ's findings and analysis in the other sections of the decision permit the Court to meaningfully review the ALJ's listings denials – denials that are supported by substantial evidence. Plaintiff fails to establish that

---

[63] AR 23 (citing AR 498, 587 (visits YMCA six times a week, social life good)).

[64] AR 23 (ALJ recognized Plaintiff's physical symptoms have been a source of her thought preoccupation and frustrations but opined the clinical examinations have not identified major difficulties in attention and concentration or thought process.).

[65] AR 21 (citing AR 412 (June 2015: Plaintiff reports involuntary jerking occurs on average two to three times a week.); *compare with* AR 606 (March 2017: "The myoclonic jerking has significantly improved since improvement in her sleep quality. [Plaintiff] estimates once or twice a month and they are minor.")).

[66] *See* AR 614 (September 2016: Plaintiff does not wish to start any medications for myoclonus jerking at this time.).

the ALJ's listing finding is not supported by substantial evidence or based on legal error.

### C.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[67] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[68] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence, improvement with treatment, and daily activities.[69]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely

---

[67] *Molina*, 674 F.3d at 1112.

[68] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[69] AR 24-26.

1
2
3
4
5
6
7
8
9

discounted on the grounds that they were not fully corroborated by the objective medical evidence.[70] However, objective medical evidence[71] is a relevant factor in considering the severity of the reported symptoms.[72] In contrast to Plaintiff's reported disabling physical symptoms, the ALJ rationally found that Plaintiff routinely exhibited normal gait and motor strength.[73] In addition, the ALJ rationally found the medical record reflected Plaintiff was not as physically limited as she claimed but instead could perform light work with postural and environmental limitations, and no more than minimally limited in Plaintiff's ability to perform basic mental work activities.[74]

10
11

Plaintiff argues "the ALJ grossly mischaracterized the record in improperly rejecting severe impairments and remarkable findings supporting a finding of

12
13

---

14
15

[70] *See Rollins*, 261 F.3d at 857.

16
17
18

[71] "Objective medical evidence" means signs, laboratory findings, or both. 20 C.F.R. § 404.1502(f). In turn, "signs" is defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." *Id.* § 404.1502(g); *see also* 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

19
20

[72] *Rollins*, 261 F.3d at 857.

21

[73] AR 25-26 (citing, e.g., AR 375, 386, 593, & 808).

22
23

[74] AR 22-23 & AR 25-26 (citing, e.g., AR 209, 367-68, 561, & 777).

disabled."[75] Specifically, Plaintiff argues the ALJ ignored Plaintiff's impairments of GERD, biliary dyskinesia, cholelithiasis, and gastroparesis, and made no findings discounting Plaintiff's mental health allegations.[76] However, as previously explained, the ALJ opinion that Plaintiff's GERD impairment was nonsevere and that Plaintiff's depression caused no more than minimal limitations is rational and supported by substantial evidence.[77] That the objective medical evidence revealed that Plaintiff's physical and mental impairments were not as limited as Plaintiff claimed was a relevant factor for the ALJ to consider.

Second, the ALJ's finding that Plaintiff's conditions improved with treatment is a relevant consideration for the ALJ when assessing Plaintiff's reported symptoms and, on this record, supported by substantial evidence.[78]

---

[75] ECF No. 15 at 16.

[76] *Id.* at 16 & 18.

[77] *See* AR 21 (citing AR 398 & 805 (Impression: normal esophagus, no evidence of esophagitis, sleeve gastrectomy found and characterized by healthy appearing mucosa, and normal duodenal bulb and second petition of the duodenum.)).

[78] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement); *see e.g.*, AR 272, 375 (Plaintiff back on citalopram which has been helpful with her depression.); AR 399 (chest pain improved); AR 606 (myoclonic jerking has significantly improved, sleep improved with BiPAP); AR 777 (Plaintiff has improved from walking less than one block to

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Lastly, the ALJ also discounted Plaintiff's symptom reports because they were inconsistent with her daily activities.[79] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[80] The ALJ highlighted that Plaintiff reported walking one to three hours per day, six days a week, cleaned the house, cared for pets, made simple meals, drove, and shopped.[81] In order for Plaintiff's cited activities to be deemed "high-functioning activities of daily living" constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to have more meaningfully articulated this finding. These cited activities, which can be achieved with multiple breaks and not on an everyday basis, do not "contradict claims of a totally debilitating impairment."[82]

---

walking up to ten miles a day.); AR 805 (upper third of esophagus and middle third and lower third of esophagus normal, no stricture/stenosis, or esophagitis, sleeve gastrectomy characterized by healthy appearing mucosa, cardia and gastric fundus normal, duodenal bulb and second portion of duodenum normal).

[79] AR 25-26.

[80] *Molina*, 674 F.3d at 1113.

[81] AR 25 (citing AR 606) & AR 26 (citing AR 204-11).

[82] *Molina*, 674 F.3d at 1112-13.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 21

1

2          Because the ALJ articulated two other supported grounds for discounting

3     Plaintiff's reported symptoms—inconsistent with the objective medical evidence

4     and improvement with treatment —the ALJ's decision to discount Plaintiff's

5     reported symptoms is upheld on this record.

6     **D.    Josh Reyes, ARNP's, Medical Report: Plaintiff fails to establish**

7            **consequential error.**

8          Plaintiff argues the ALJ failed to meet his duty to develop the record when

9     the ALJ did not admit a medical report from nurse practitioner Josue Reyes. A

10    claimant has a duty to submit or inform the ALJ about any written evidence no

11    later than five business days before the hearing.[83] If the claimant misses the

12    deadline, the ALJ must accept the untimely evidence if the ALJ has not yet issued

13    a decision and one of the following exceptions apply:

14         1) A Social Security Administration (Administration) action misled
              the claimant;

15         2) The claimant's physical, mental, educational, or linguistic
              limitation(s) prevented the claimant from informing the
16            Administration about or submitting the evidence earlier; or

17         3) Some other unusual, unexpected, or unavoidable circumstances
              beyond the claimant's control prevented them from informing the
18            Administration about or submitting the evidence earlier. Examples
              include, but are not limited to, serious illness, death or serious
19            illness in immediate family, or the claimant actively and diligently
              sought evidence from a source and the evidence was not received or
20            was received less than five business days prior to the hearing.[84]

21    ─────────────────────

22    [83] 20 C.F.R. § 404.935(a).

23    [84] 20 C.F.R. § 404.935(b).

1

2      This is known as the "five-day rule."[85]

3          Plaintiff's video hearing was held on December 12, 2017. On December 4,

4      2017 – five business days before the hearing – Plaintiff's attorney sent the ALJ a

5      letter informing the ALJ that his "office has been working on obtaining all medical

6      records for [Plaintiff's] case" but they "are still waiting for" "a "Medical Report by

7      PCP," dates "TBD."[86] Plaintiff's attorney provided the medical report to the ALJ

8      prior to the hearing.

9          The ALJ declined to consider the medical report because Plaintiff failed to

10     submit or inform the ALJ about the additional written evidence five days before

11     the scheduled hearing date. The ALJ determined the letter "did not adequately

12     inform [him] about the nature of [the] document under SSR 17-4p[87] (e.g., source,

13

14     _____

15     [85] *See Lena J. v. Comm'r of Soc. Sec.*, No. C18-6007-RBL-BAT, 2019 WL 3291039,

16     at *1 (W.D. Wash. July 1, 2019).

17     [86] AR 296.

18     [87] SSR 14-4p states:

19         [t]o satisfy the claimant's obligation under the regulations to 'inform'
           us about written evidence, he or she must provide information specific
20         enough to identify the evidence (source, location, and dates of
           treatment) and show that the evidence relates to the individual's
21         medical condition, work activity, job history, medical treatment, or
           other issues relevant to whether or not the individual is disabled or
22         blind. If the individual does not provide us with information specific
           enough to allow us to identify the written evidence and understand
23         how it relates to whether or not the individual is disabled or blind, the
           individual has not informed us about evidence within the meaning of

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 23

location, dates of treatment.)"[88] The ALJ also declined to admit the evidence

because the exceptions in 20 C.F.R. § 404.935(b) were not met.[89]

Plaintiff does not argue that that she did not submit Mr. Reyes report within

five business days of the December 12, 2017 hearing. Rather, Plaintiff argues she

timely informed the ALJ about the evidence since Plaintiff's attorney notified the

ALJ about the report on December 4, 2017. The question therefore is whether the

letter from Plaintiff's attorney properly "informed" the ALJ of Mr. Reyes medical

report.

Although the Ninth Circuit has not addressed the application of the five-day

rule, there are cases from within the Circuit dealing with the exclusion of late-

presented evidence. In *Christi L. v. Commissioner of Social Security*, the plaintiff

challenged the ALJ's exclusion of two questionnaires from evidence based on the

five-day rule.[90] Christi's counsel had sent the questionnaires to mental health

professionals who had counseled Christi. Christi's counsel informed the ALJ about

the two questionnaires ten days before the hearing, but they were signed and

submitted less than five days before the hearing. The ALJ declined to admit them,

---

20 CFR 404.935, 404.1512, 416.912 or 416.1435, and we will not
request that evidence.

[88] AR 17.

[89] *Id*.

[90] 2020 WL 733845, Case No. 3:19-cv-00185-MK (D. or. Feb. 13, 2020).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 24

reasoning that "the evidence does not exist until it is signed."[91] The ALJ further found that the requirements of the rule that the evidence should be admitted if counsel was diligent in obtaining the evidence were not met.[92] The district court remanded the case for further administrative proceedings, finding first that (1) there was no "signature requirement" for the questionnaires to qualify as "evidence," and therefore (2) counsel had complied with the five day rule by informing the ALJ about the evidence – two specifically identified (and not voluminous) questionnaires – more than five days before the hearing. The district court held that it did not need to reach the question of diligence because the rule had not been violated.[93]

In *Vickie M. v. Saul*, Vickie challenged the ALJ's exclusion of approximately 3,000 pages of medical records. Vickie argued the ALJ had sufficient notice of the evidence because twenty days before the hearing counsel requested the issuance of a subpoena.[94] The cover letter to the ALJ requested the subpoena stated that the records were expected to contain a generic laundry list of information. There was no indication of what specifically or how much information would be obtained. The court indicated:

---

[91] *Id*. at *3.

[92] *Id*.

[93] *Id*.

[94] 2020 WL 1676624, Case No. 2:19-cv-01740-GJS (C.D. Ca. April 6, 2020).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

   [w]hile this may constitute notice that counsel was still seeking
   something – *i.e.*, was in the process of gathering information" it found
   "that it does not qualify as the notice requirement by the C.F.R. To
   decide otherwise would eviscerate the rule, as any subpoena request
   or letter stating the counsel was still seeking documents would
   qualify, allowing a plaintiff to submit any amount of any type of
   evidence whenever it was finally obtained.[95]

Here, five days before Plaintiff's hearing, Plaintiff's attorney sent a letter to

the ALJ informing him they were still waiting on a medical report from Plaintiff's

primary care provider. Similar to *Christi L.*, Plaintiff's attorney specified that they

were waiting for a medical report from Plaintiff's primary care physician. However,

the dates of the medical report and the name of the primary care physician were

not included. Upon request from the Court, Plaintiff filed the medical report.[96] The

medical report, dated December 5, 2017, is a three-page document completed by

Mr. Reyes, in which he diagnosed Plaintiff with focal myoclonus fibromyalgia,

recurrent nausea, GERD, and depression, and opined Plaintiff was limited to

sedentary work and would miss four or more days per month of work.[97]

---

[95] *Id.* at 4.

[96] ECF Nos. 30 & 31.

[97] ECF No. 31.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Any error in failing to admit Mr. Reyes' medical report is harmless.[98] As previously discussed, the ALJ properly discounted a severe diagnosis of fibromyalgia, GERD, and depression. Furthermore, the ALJ determined that even if Plaintiff could perform only a reduced range of sedentary work with ready access to a restroom, a finding of "not disabled" would still be appropriate.[99]

**E.    Steps Four and Five: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ's hypothetical failed to consider the following limitations consistent with Plaintiff's testimony and supported by substantial evidence: "absent more than one day per month on a consistent basis, off task more than 10 percent of the time, and the need for three to four additional unscheduled breaks lasting 15 to 20 minutes and occurring to two to three days per week."[100]

---

[98] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n error is harmless so long as their remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion.").

[99] AR 29.

[100] ECF No. 15 at 20. Plaintiff also argues little weight should be given to testifying medical expert Dr. Lynne Jahnke because Plaintiff's testimony clarified the issue of Plaintiff's frequency of vomiting and diarrhea keeping Plaintiff from leaving her house. ECF No. 15 at 21. The ALJ gave great weight to Dr. Jahnke because she reviewed the entire longitudinal record and thoroughly explained her conclusions. Plaintiff does not challenge the reasons the ALJ cited to support discontinuing Dr.

However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[101]

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 28**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 21st  day of September 2020.

s/Edward F. Shea
_____
EDWARD F. SHEA
Senior United States District Judge

---

Jahnke's opinion, thus the Court declines to review it. *See Carmichkle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

[101] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).